Court, my name is Maureen Fox, and I represent Greg Williams. Could you pull the mic right down to you? Great. Thank you. He is a state prisoner who filed a petition for habeas corpus. As I think you know, he was high on methamphetamine when he entered his neighbor's house in the middle of the night. He did nothing there other than lie on a bed when he was in the house. Nonetheless, he was convicted of burglary with the intent to commit a sexual assault. So the issue here, is there any challenge to the fact that he actually entered at nighttime? The issue is, what was his motivation, right? Exactly. Entering at nighttime would have been an ordinary trespass, a misdemeanor, and would not have been an occupied dwelling. Well, entering at nighttime, an occupied dwelling, then starts to get close to burglary. The question is, what was his intention at the time? Yes, exactly. The critical issue was his intention. Right. And the primary evidence on that issue were the two police interrogations, the two back-to-back interrogations. And there were two certificate issues here relating to those interrogations. One was the Miranda issue. The police questioned Appellant even though he had requested counsel. And the other is the voluntariness of the interrogations. Now, the jury heard all of that, did they not? They heard the entire tapes of the transcripts? There were some expurgations from the tapes. Okay. They heard most of it. And obviously, were you trial counsel? No. Okay. So trial counsel, I assume, spent a fair amount of effort both at trial and cross-examination of the officers and in closing argument to the jury, arguing that your client was too high on methamphetamine, basically, to have formed the intent. I believe that's so. Okay. And the jury resolved the voluntariness and the dispute over his intent against your client. I don't know that they addressed the issue of voluntariness. That would have been addressed in the question before the court, whether to admit the interrogation. Okay. All right. So we have to – I guess what I was leading to is we do then have to view the evidence and the like most favorable to the jury's verdict on whether or not he formed the intent, do we not? Yes. Okay. The State court, in determining the Miranda issue, applied the wrong standard. They applied the standard of Davis v. the United States rather than Miranda and McNeil. In this case, there had been no waiver of the right to counsel before defendant asked for counsel. He said, I think first I should have a lawyer. And the State court said that that was equivocal and that Davis applies. Now, in fact, the standard that should have applied is Miranda and McNeil, where if the suspect indicates in any manner that he wants a lawyer, that means that, indeed, he does have counsel. Counsel, it's not in any manner, is it? It has to be an unambiguous invocation of the right. And the question is whether or not the words that he used amounted to a clear and unequivocal request for counsel. Well, I think under United States v. Rodriguez from this Court, there is the right to seek further clarification of what is said. Okay. Well, before we get to further clarification, do you agree with what I just said? Is that the controlling legal principle, that the Sixth Amendment right must be clearly and unequivocally requested by the defendant in order to trigger it? No, I don't think that's how I think that's how I think that's how I think that there must be a clear and unequivocal waiver, a knowing and intelligent waiver. Waiver. Of the right. All right. And until there is a knowing and intelligent waiver of the right, there can be no question. Okay. And the State courts found, as a matter of fact, that the words that your client used were ambiguous, and that, therefore, there was nothing improper in the San Jose detectives asking clarification as to whether or not he really wanted a lawyer, correct? I think that's correct, yes. All right. And under AEDPA, don't we have to defer to that determination as to ambiguity? Well, I think that the there was a clear error of by the State court because the the Supreme Court precedent says that they may ask clarifying questions and then proceed to the substantive questioning only when there has been a clear waiver, a knowing and intelligent waiver, and here there was But you're you're you're backing into the argument. You're you're starting with the conclusion that he did make an invocation. And the problem I'm having is that the State courts focused first upon whether or not he made a clear invocation. And they said, no, that the request the words he used were not a clear request for a lawyer. And therefore, the detectives could ask him, well, what do you mean? Yes, I'm not saying that they could not ask him what what do you mean? Okay. But when they asked him what he so just so I so I understand when he said, I think that I should have a lawyer, that is not an unambiguous request, correct? The courts have held that that is not an unambiguous request in the Davis situation. Yes, that's correct. But the the officers then said to him, now, you said the first thing you said, you wanted a lawyer, and he responded right. At that point, there was no ambiguity. At that point, his intention was clear. But he kept talking, didn't he? I mean, I know you wanted to stop it at that point and sort of freeze frame, but the courts focused on what he then continued to say. Right. Well, all he said after that was, well, it was because and then he was immediately interrupted. And the officer said, you can't talk to us if you want a lawyer, which is a contradiction of Moranbit. He has the right to have a lawyer present during interrogation. But that's a correct statement of the law under Edwards v. Arizona, isn't it? That he cannot talk? Yeah, that we can't talk to you if you want a lawyer. That's what the invocation of the Sixth Amendment right means. We cannot talk to you. All questioning must cease. We cannot talk to you without your lawyer present if you want a lawyer. Right. They were saying, we cannot talk to you if you want a lawyer. They said, you have to be able to have a lawyer or you can talk to us. Here are the words. The officer, I think it's Aviles, says, I want you to understand, period, but if you want a lawyer, we'll walk out of this room. You can't talk to me if you want a lawyer. Now, in that context, where there was no lawyer present, what's wrong with that statement? Because they said you have to – essentially, they were telling him you have to choose. You can either have a lawyer or you can talk to us. But there's not going to be any lawyer available now. I don't – I'm sorry. I don't read it that way. I see the officer pretty responsibly saying, I just want to be clear, and I want you to be clear, that if you want a lawyer, we can't question you. I think, as I read it, it comes across differently. They said to him, if you want a lawyer, we'll walk out of this room right now. You can't have a lawyer if you want to talk to us. They implied that he'd be left there, he'd be handcuffed in that small room. He continued to talk about getting a lawyer. You read the card. It's an intelligent thing to do. They said, I'm not getting you a lawyer. But didn't the state courts find, based on the hearing that was conducted, that the detectives conducted themselves properly by trying to explain to him that if he did indeed persist in his request for counsel, that they couldn't talk to him anymore? And in fact, in fact, the state courts all but commended the detectives for being honest with your client as to what the ramifications would be if he insisted on having a lawyer. They did not see, apparently, that there was a contradiction between the statement, you can't talk to me if you want a lawyer, you have to be a lawyer. But at that moment, that was true as a matter of law. If in fact, your client was requesting an attorney, then the detectives could not speak any further with him. That's true, until he gets a lawyer. But that is not what they said. They told him, you can't talk to us if you want a lawyer, and that contradicted Miranda. And then they- We're not talking about Miranda here. We're talking about Edwards v. Arizona. And I think, if I remember Edwards correctly, the Supreme Court said, when the suspect makes a clear and unequivocal request for counsel, all further questioning must cease. And that's what the detectives were talking about. Were they not, counsel? They may have had that in their mind. I don't think that's what they expressed, because they did not say, you can talk to us with counsel, but we can't get somebody for you right now, but we'll tell you how to get one, or we'll make further arrangements later, or you can make arrangements. You'll find out from the judge how you're going to- Doesn't that distinguish the facts, distinguish itself from the decision in Anderson v. Terhune, where our in-bank court found that the detectives were being cute when the defendant invoked, when he said, I plead the Fifth, and the detective's response was, what's that? I take the Fifth. I take the Fifth, yeah. I'm sorry. I'm not understanding the question. Do you know the case? I'm not really that familiar. I'm not familiar with the case. I guess you can't help me with the answer if you don't know the case. Okay. Did you have about half a minute left? Did you want to save it for rebuttal? Yes, I will. Okay. Thank you for coming in this morning. Thank you for your argument. We'll hear from the State at this time. Mr. Chung. May it please the Court, Doreen Chung, appearing for Respondent Horrell. I'll be brief. In this case, simply put, the appellant has not established a violate that the State courts failed, unreasonably applied, clearly established, clearly established federal law. The controlling precedent here is Davis. The trial courts and the State appellate courts quite reasonably found that the appellant did not make a clear and unequivocal invocation, because he may use qualifying statements such as, I think. The officers reasonably followed up on that as they were entitled to under, and even occurred to do so under Davis. They clarified. But interestingly, when they followed up, the officer of VILA characterized what he had said first time as you wanted a lawyer. The first thing you said, you wanted a lawyer. So does that take the ambiguity out of that when he said right? I would suggest not, Your Honor. Particularly in the context of this case, where appellant's full invocation was something along the lines of, first of all, he wanted a lawyer, and second of all, he was trying to do God's will. So in combination, it was not clear at all what the appellant meant, or even if he fully understood the nature of his invocation, because he combined a request with, an equivocal request for a lawyer, with a characterization of God's will. And by combining those two things, it made it extremely difficult for the officers to understand what he was talking about. So they tried to clarify it for him by saying, you want a lawyer, right? And they tried to make that request as clear to him as possible. And even having done that, appellant still declined to unequivocally make the request, and then eventually agreed to talk to officers. If the officers had said bluntly to this individual, who was in custody, correct? Yes. Look, if your choice is A or B, A, if you want a lawyer, or B, talk to us. If you want to talk to us, you've got to talk to us. You can't have a lawyer. If they'd said that, would that have been a problem? If you want to talk to us, you can't have a lawyer? Yeah. Well, that could be problematic. So if they've offered that choice, you agree that would be problematic? That would be problematic. That did not happen here, Your Honor. I've read part to your opponent of Iles, right after that, says, I just want you to — I just want to understand. That's a statement you made. You want a lawyer. And then there's an inaudible response from Mr. Williams. And then Avila says, or do you want to talk to us? So isn't he putting that choice to the witness, to the individual under custody? Well, it's certainly true, Your Honor, that if appellant had requested counsel, that all questioning would have to cease and he couldn't talk to — to counsel. That's certainly the case. If appellant had requested counsel, questioning would have had to cease and the officers would have had to stop any questioning. So that's actually a correct statement. But you agree it would be impermissible to put the simple choice to a person in this circumstance. You can either have a lawyer or talk to us. If you want to talk to us, you can't have a lawyer. They never said if you want to talk to us, you can't have a lawyer. I understand that's a hypothesis. But that would be problematic, Your Honor. Okay. Of course, if I'm looking at page 111 of the excerpt, Detective Bravo had previously, while reading him the Miranda warning, said, you have the right to the presence of an attorney before and during any questioning. Do you understand? And Mr. Williams said, yes. That's true. I take that to mean that they couldn't, that they didn't have a lawyer present in the — in the police station. And so they weren't able to immediately obtain a lawyer and then continue questioning with him present. They would have had to stop questioning in order to obtain a lawyer and then — And he says that on 113, doesn't he? I mean, a little bit above the part that Judge Hawkins just read to you. But if you want a lawyer — this is now Aviles, Detective Aviles again — I just want to understand, but if you want a lawyer, we'll walk out of this room. You can't talk to me if you want a lawyer. And then Mr. Williams says, oh. Once again, Your Honor, that's a — that's a correct statement insofar as questioning would have to cease. And they didn't have — they clearly didn't have a lawyer present on hand that they could instantly supply to the appellant. So under the — What if — I'm sorry. I'm sorry. What if he had said initially, I want a lawyer? And would that justify any follow-up questions at all? I would suggest not, Your Honor, because that would be a clear and unambiguous invocation of his right to counsel. If he had simply said, I want a lawyer. Yes. So ignoring the very first thing he said about, I think, when Officer Aviles asked him, the first thing you said was you wanted a lawyer. Is that the first thing he said? Right. Now, why isn't that an unequivocal request for a lawyer that wouldn't justify any follow-up questions? Because that was actually, Your Honor, a statement of Sergeant Avila and not — and not appellant's actual statement. Appellant's actual statement — But he said — when he said right, what does that mean? He's simply trying to clarify. I would suggest, Your Honor, he's simply trying to clarify the invocation. He said right. When he said right, doesn't that mean, yes, that's what I said? I would suggest, Your Honor, it's a leading question, essentially. He's just trying to clarify it for appellant. And he gave appellant an opportunity to clarify his ambiguous statement into a clear and unambiguous one. And I would suggest that appellant did not avail himself of that opportunity. What if he had — what if the defendant had said, right, I want a lawyer? Well, at that time — at that point, yes, Your Honor. Would there have been any justification for further questions? I would suggest not, Your Honor. If, at that point, appellant had said, right, I want a lawyer, that would have, at that point, amounted to a clear and unambiguous invocation of his right to counsel. And further questioning would have had to cease. I would suggest that that is, in fact, the case, Your Honor. But that's not what happened here. So, for these reasons, I would respond and argue that the state court did not unreasonably apply a clearly established federal precedent in the form of Davis or Edwards. I'm happy to answer any further questions. Otherwise, I'd submit at this time. I don't see anything further. Thank you, Counsel. Thank you. Rebuttal? Yes, please, Your Honor. I would just like to remind the Court that in Smith v. Illinois, the Supreme Court said that an accused's post-request responses to further interrogation may not be used to cast doubt on the clarity of his initial requests for counsel. When he said, right, that was his initial clear, unequivocal request for counsel. Right. The first thing I said was, I want a lawyer. Nothing he said after that can then be used to cast doubt on that clear and unequivocal request for counsel. But that's not all that he said. I mean, the first time that he said it, he had this odd statement about, I'm trying to figure out, well, trying to do God's will. And then the detective said, trying to do God's will, what do you mean by that? And then he kept talking. And when they get to the point that Judge Hugg was just talking about, his answer wasn't just right. He goes on to say, well, it was because, and the detective says, help us, help us. And Williams says, I, because, and at that point, the detective says, look, if you want a lawyer, we have to walk out of here. And then Williams continues talking. He was certainly not obliged to give any reason for his request for counsel. He may have felt that they were looking to him for some reason. He was declining to speak with them. He needed to explain to these powerful people why he didn't want to speak with them. But that doesn't cast doubt on the fact that he said, right, he wanted a lawyer. And at that point, the police officers should have said, all right, fine, we're taking you back to your cell, or something like that. But they didn't. They continued to question him. And they contradicted the Miranda warnings. And it was only after that, and only after his fumbling attempts to get a lawyer, which they did not encourage in any way, they discouraged. Finally, he said, all right, I'll just let God handle it. I'll deal with you without a lawyer. This interrogation was audiotaped? Yes. Okay. And were the complete audiotapes made available to the defense at trial? Yes. Yes. I believe both the complete and the extradited tapes. Okay. All right. Thank you. Thank you both. Thank both of you for coming in this morning and arguing a very interesting case. It will be submitted for decision.
judges: Hug, Hawkins, Tallman